**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiff*
*(Additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ALMORN BRACKETT,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON COUNTY,<br><br>Defendant. | Case No. 3:26-cv-554<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANT WASHINGTON COUNTY AND SUPPORTING MEMORANDUM** |

.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

MOTION ........ 1

MEMORANDUM IN SUPPORT ........ 2

INTRODUCTION ........ 2

BACKGROUND ........ 3

- I. Procedural History ........ 3
- II. Factual and Legal Background ........ 4
- III. The Proposed Schedule for Approval of the Settlement ........ 5
- IV. Terms of the Settlement ........ 5
- V. Notice of the Settlement ........ 8

ARGUMENT ........ 8

- I. The Settlement Merits Preliminary Approval ........ 8
  - a. The standards governing preliminary approval of a class action settlement. ........ 9
- II. The Proposed Settlement Is Fundamentally Fair, Adequate, and Reasonable ........ 11
  - a. The Settlement should be presumed fair because it resulted from non-collusive, informed, arm's-length negotiations. ........ 11
  - b. The Settlement does not suffer from any obvious deficiencies. ........ 13
  - c. The Settlement does not improperly grant preferential treatment to the Class Representative or segments of the Class. ........ 15
  - d. The Settlement falls within the range of possible approval. ........ 15
- III. The Proposed Settlement Class Satisfies the Standard for Certification Under Rule 23 16
  - a. The Rule 23(a) requirements are satisfied. ........ 16
    - i. The Settlement Class is so numerous that joinder is impractical ........ 16
    - ii. The Commonality requirement is satisfied. ........ 17
    - iii. The Settlement Class Representative's claims are typical of those of the Settlement Class. ........ 18
    - iv. The Settlement Class Representative and Class Counsel will adequately represent the Class. ........ 19
  - b. The Rule 23(b)(3) requirements are satisfied. ........ 20
    - i. Common questions predominate ........ 20
    - ii. The class action mechanism is superior to other methods of adjudication. ........ 21

IV. The Form and Method of Notice Should Be Approved ........ 22
CONCLUSION ........ 24

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ... 10
*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ... 11
*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ... 24
*Bell v. Consumer Cellular, Inc*.,
No. 3:15-cv-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017) ... 14, 15
*Chehalem Physical Therapy v. Coventry Health Care, Inc*.,
No. 3:09-CV-00320-HU, 2014 WL 4373150 (D. Or. Sept. 3, 2014) ... 17
*Churchill Vill., L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) ... 27
*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ... 23
*Costelo v. Chertoff*,
258 F.R.D. 600 (C.D. Cal. 2009) ... 21
*Cotter v. Lyft, Inc*.,
176 F. Supp. 3d 930 (N.D. Cal. 2016) ... 11
*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034 (S.D. Cal. 2015) ... 15
*Ellis v. Costco Wholesale Corp*.,
657 F.3d 970 (9th Cir. 2011) ... 20, 21, 22
*Fosbre v. Las Vegas Sands Corp*.,
No. 2:10-CV-00765-APG-GWF, 2015 WL 3722496 (D. Nev. June 15, 2015) ... 25
*Fraser v. ASUS Comput. Int'l*,
No. C 12–00652 WHA, 2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) ... 17
*Freedman v. Louisiana-Pacific Corp*.,
922 F. Supp. 377 (D. Or. 1996) ... 21
*Granados v. Onpoint Comm. Credit Union*,
No. 3:21-cv-847-SI, 2025 WL 1640204 (D. Or. June 10, 2025) ... 17
*Hanlon v. Chrysler Corp*.,
150 F.3d 1011 (9th Cir. 1998) ... passim
*Hanon v. Dataproducts Corp*.,
976 F.2d 497 (9th Cir. 1992) ... 21, 22
*Hurst v. First Student, Inc*.,
No 3:15-cv-00021-HZ, 2015 WL 6437196 (D. Or. Oct. 22, 2015) ... 21
*In re High-Tech Emp. Antitrust Litig*.,
No. 11-CV-02509-LHK, 2014 WL 3917126 (N.D. Cal. 2014) ... 11
*In re Hyundai and Kia Fuel Econ. Litig*.,
926 F.3d 539 (9th Cir. 2019) ... 19
*In re Mego Fin. Corp. Sec. Litig*.,
213 F.3d 454 (9th Cir. 2000) ... 12, 18

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........ 13
*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ........ 10
*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........ 11, 12, 18
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
MDL No 2672 CRB (JSC) 2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ........ 10, 11
*In re Zynga Sec. Litig.*,
No. 12-CV-04007- JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........ 17
*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) ........ 20, 21
*Johnson v. Quantum Learning Network*,
No. 15-CV-05013-LHK, 2016 WL 4529607 (N.D. Cal. Aug. 30, 2016) ........ 12
*Lusby v. Gamestop, Inc.*,
297 F.R.D. 400 (N.D. Cal. 2013) ........ 12
*Medearis v. Or. Teamster Emp'rs. Tr.*,
No. CV. 07-723-PK, 2009 WL 1788183 (D. Or. June 19, 2009) ........ 13
*Moss v. U.S. Secret Serv.*,
No. 1:06–cv–3045–CL, 2015 WL 5705126 (D. Or. Sept. 28, 2015) ........ 19, 20, 23
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........ 10, 13
*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ........ 14
*O'Shea v. Am. Solar Solution, Inc.*,
318 F.R.D. 633 (S.D. Cal. 2017) ........ 25
*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........ 10, 18
*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ........ 26
*Pecover v. Elec. Arts Inc.*,
No. C 08–2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ........ 20
*Pokorny v. Quixtar Inc.*,
No. 07–0201 SC, 2011 WL 2912864 (N.D. Cal. July 20, 2011) ........ 16
*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........ 13
*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ........ 26
*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005) ........ 21
*Smith v. Am. Greetings Corp.*,
No. 14-cv-02577-JST, 2015 WL 4498571 (N.D. Cal. July 23, 2015) ........ 14
*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........ 10
*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ........ 23

*Sullivan v. Kelly Servs.*,
268 F.R.D. 356 (N.D. Cal. 2010) ... 21
*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ... 24
*Tyler v. Hennepin Cnty., Minnesota*,
598 U.S. 631 (2023) ... 5
*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ... 24
*Viceral v. Mistras Grp., Inc.*,
No. 15-CV02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ... 18
*Villanueva v. Liberty Acquisitions Servicing, LLC*,
319 F.R.D. 307 (D. Or. 2017) ... 19, 20
*Villanueva v. Morpho Detection, Inc.*,
No. 13-cv-05390-HSG, 2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ... 15
*Villegas v. J.P. Morgan Chase & Co.*,
No. CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ... 18
*Wal-Mart Stores, Inc. v. Dukes*, 5
64 U.S. 338 (2011) ... 11, 20
*Walsh v. CorePower Yoga LLC*,
No. 16-cv-05610-MEJ, 2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ... 15
*Walter v. Hughes Commc'ns, Inc.*,
No. 09–2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011) ... 17
*West v. Circle K Stores, Inc.*,
No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ... 17
*Woody v. Fred Meyer Stores, Inc.*,
No. 3:22-cv-01800-HZ, 2024 WL 4528220, at *2 (D. Or. Oct. 17, 2024) ... 12

**Rules**

Fed. R. Civ. P. 23(a)(1) ... 19
Fed. R. Civ. P. 23(a)(3) ... 21
Fed. R. Civ. P. 23(b)(3) ... 23
Fed. R. Civ. P. 23(c)(2)(B) ... 25, 26, 27
Fed. R. Civ. P. 23(e)(1)(B) ... 25
Fed. R. Civ. P. 23(e)(2) ... 13

**Treatises**

4 Newberg on Class Actions (5th ed.) ... 16

**MOTION**

Plaintiff moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the proposed class action settlement with Defendant Washington County ("Washington" or the "County"). In support of this motion, Plaintiff relies upon the following Memorandum in Support.

For the reasons set forth in the attached Memorandum in Support, Plaintiff asks that the Court enter an Order in the form attached hereto as Exhibit 1 and agreed to by the settling parties granting preliminary approval to the Settlement so that notice of the terms of the Settlement may be given to Settlement Class Members, and that the Court schedule a hearing to consider: (1) final approval of the Settlement; (2) certification of the Settlement Class; (3) Class Counsel's request for an award of attorneys' fees, litigation costs and expenses, and a service award to the Class Representative; (4) entry of final judgment; and (5) any other matters the Court may deem appropriate.

Washington consents to this motion and to the entry of the proposed order preliminarily approving the settlement, conditionally certifying the class for settlement purposes, approving the form and manner of class notice, and setting a date for the final approval hearing.

**<u>MEMORANDUM IN SUPPORT</u>**

**INTRODUCTION**

This litigation on behalf of proposed plaintiff classes whose equity in tax foreclosed properties was taken by Oregon Counties began in October 2023. The first-filed class action complaint, *Lynch v. Multnomah County,* et al., No. 3:23-cv-01502, named Multnomah, Lane, and Yamhill Counties as defendants, and alleged and sought relief against a defendant class of all Oregon Counties that engaged in a uniform practice of retaining proceeds from foreclosure sales in excess of the taxes owed, or of retaining properties worth more than the taxes owed.

Since the filing of the *Lynch* case, additional complaints have been filed bringing additional defendant counties into the litigation. In 2025, the undersigned were retained by Plaintiff Almorn Brackett to pursue his claims for the return of surplus proceeds and equity, both individually and on behalf of a Washington County class. Thereafter, the parties opened negotiations to explore a prompt resolution of the claims. Those discussions bore the fruit of this proposed settlement, which provides excellent relief to the class comparable to and in some cases more extensive than the relief in the prior settlements reached in this litigation. Under the Settlement, Washington County will pay $1,500,000.00 into a common fund, representing 100% of the surplus proceeds obtained and 80% of the surplus equity it retained, plus interest, for both sold and retained properties.

This Court should preliminarily approve the Settlement under the well-established standards in the Ninth Circuit for approval of class settlements pursuant to Rule 23: Plaintiff and his counsel have proven to be adequate representatives; the Settlement resulted from arm's length negotiation; the Settlement affords Settlement Class Members substantial, significant, and immediate relief; the Settlement treats Settlement Class Members equitably; Plaintiff's and his

counsel's endorsement of the Settlement is entitled to significant weight; and the public interest in settling class actions supports approval of the Settlement. In short, the proposed Settlement was negotiated at arm's length by competent and experienced counsel and provides a substantial benefit to each member of the Settlement Class. For these reasons the Settlement merits approval.

## BACKGROUND

### I. Procedural History

Since the Court is familiar with the procedural history of these cases, we only summarize them briefly. The *Lynch* plaintiffs filed their initial Complaint in this action on October 12, 2023, against Multnomah County, Lane County and Yamhill County, making it one of the first actions seeking to recover Surplus Proceeds on behalf of former owners of tax-foreclosed properties in Oregon. *Sawyer v. Marion County*, 3:23-cv-01971-IM; *Gabbert v. Josephine County*, 1:23-cv-01434-IM; and *Baker v. Baker County*, 2:24-cv-01503-IM, were subsequently filed and the four cases were later consolidated by this Court, with *Lynch* designated as the lead case (hereinafter "Consolidated Cases"). (*Lynch*, ECF 145.)

In nearly three years of litigation, the plaintiffs in the Consolidated Cases have extensively briefed four motions to dismiss and numerous issues related to those motions. (*See Lynch*, ECF 54 (Lane County motion to dismiss); *Lynch*, ECF 67 (Marion County motion to dismiss); *Gabbert*, ECF 31 (*Gabbert* Defendants' first motion to dismiss); *Gabbert*, ECF 106 (*Gabbert* Defendants' second motion to dismiss).) They have also briefed several additional motions, including motions to intervene (*Lynch*, ECF 42 (Oregon Counties' motion to intervene); *Gabbert*, ECF 37 (same)); motions to consolidate (*Lynch*, ECF 43 (*Lynch* defendants' motion to consolidate); *Lynch*, ECF 44 (*Lynch* plaintiffs' first motion to consolidate); *Lynch*, ECF 140

(now-Consolidated Cases plaintiffs' motion to consolidate); *Gabbert*, ECF 38 (*Gabbert* defendants' motion to consolidate)); and issues concerning supplemental jurisdiction (*Lynch*, ECF 138). The plaintiffs in the Consolidated Cases have also engaged in extensive discovery, reviewing numerous large spreadsheets and thousands of pages of underlying documents, including third-party discovery directed to all Oregon counties, and have devoted substantial time to settlement conferences and negotiations with the named-defendant counties.

These extensive efforts culminated in the filing of the complaint against Washington County and in the parties' shared recognition that an early resolution would be preferable, given that the plaintiffs in the Consolidated Cases had already litigated—and prevailed on—the major substantive issues.

## II. Factual and Legal Background

Plaintiff Almorn Brackett owned two parcels of land in Washington County, Oregon: one located on NW Gales Creek Road in Gales Creek (Tax Lot ID No. 1N4060000800) and the other at SW 139th Avenue and SW 6th Street in Beaverton (Tax Lot ID No. 1S116CA01400) (together, the "Brackett Properties"). (ECF 1 ¶¶ 11–13). In October 2021, Washington filed a complaint to foreclose upon the Brackett Properties due to overdue taxes, fees, and interest in the amount of $631.98. (*Id.* ¶¶ 14, 16.) The combined value of the properties was $14,350.00. (*Id.* ¶¶ 15, 16.) Washington County retained the Bracket Properties and did not return the difference between the accumulated taxes, penalties, and fees and value of the properties—which amounted to approximately $13,718.02—to Mr. Brackett, nor did it offer any process by which he could claim the Surplus Proceeds. (*Id.* ¶¶ 21–23.)

In *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023) ("*Tyler*"), the Supreme Court considered whether it was unconstitutional for the government to retain the surplus

proceeds from tax foreclosure sales—the same Oregon practice being challenged in this case. The Supreme Court unanimously held that keeping surplus proceeds violates the Fifth Amendment's Takings Clause when no opportunity to obtain the surplus is provided, and two Justices agreed that the practice also violates the Excessive Fines Clause of the Eighth Amendment. *Id.* at 639–48. This lawsuit was filed to vindicate the rights (including those under the Fifth Amendment and the Oregon Constitution) of property owners in Oregon under the Supreme Court's holding in the *Tyler* case.

## III. The Proposed Schedule for Approval of the Settlement

The settling parties respectfully request that the Court enter the Proposed Order Preliminarily Approving Settlement, which provides the following:

1. Within 45 days of entry of the Order, notice to the Settlement Class shall be mailed and published. Ex. 1 ¶ 13.
2. A Motion for Final Approval of the Settlement and a Motion for Attorneys' Fees shall be filed no later than 30 days after the notice is mailed and published. Ex. 1 ¶ 21.
3. No later than 60 days after the notice is mailed and published, Class Members must submit any requests for exclusion ("opt-outs") from the Settlement Class, or submit any objections to the Settlement. Ex. 1 ¶ 15.
4. Any objections to the Settlement or Motion for Attorneys' Fees shall be filed by Class Counsel with the Court at least 14 days before the date for the Final Approval Hearing. Ex. 1 ¶18.
5. All Claims must be submitted within 180 days after entry of the Order. Ex. 1 ¶ 14.
6. Scheduling the Final Approval hearing at the Court's convenience. Ex. 1 ¶ 22.

## IV. Terms of the Settlement

The Settlement is a common-fund settlement, which provides that Washington will pay $1,500,000.00 into the Settlement Fund in consideration of a release of claims in this litigation. Ex. 2 (Settlement Agreement) ¶ 12. This amount represents 100% of the surplus proceeds

obtained from most eligible properties that were sold, and 80% of the surplus equity from most eligible properties that were retained or transferred by Washington County, with simple interest at 9 percent annually from the date the properties were deeded to the County. Ex. 3 (Proposed Class Notice) at 4–5.

After the costs of notice; claims administration; approved attorneys' fees, litigation costs, and expenses; and service awards to the Class representatives are paid from the Settlement Fund, each Settlement Class Member that submits a valid and timely claim will be eligible for a payment equal to up to the full amount of the surplus proceeds or equity applicable to the Class Member's eligible property, plus accrued interest. Ex. 2 ¶ 15(d). In the event that the total amount of approved claims exceeds the amount available for distribution from the Settlement Fund, then all approved claims will be reduced pro-rata. *Id*. Under the Settlement, Plaintiff's counsel will file a motion with this Court for a fee award not to exceed 30% of the Settlement Fund, *id*. ¶ 33, and Plaintiff's motion will in fact seek less than the 30% cap set forth in the agreement.

The costs of notice and claims administration, in an amount not to exceed $100,000.00, will be paid from the Settlement Fund. *Id.* ¶ 15(a). Any remaining amount in the Settlement Fund after the above-described disbursements have been made will be used first to reimburse Washington for any payments of Surplus Proceeds it makes to Settlement Class Members who request exclusion ("opt-outs") and are paid prior to the close of the claims period. *Id.* ¶ 15(e). Any funds remaining thereafter will be distributed pursuant to the cy pres doctrine to an organization or entity that provides assistance or services to individuals and families facing foreclosure, or to a special fund created to inform property owners of their options to avoid foreclosure beyond the requirements of House Bill 2089. *Id.* ¶ 15(f).

The Settlement Class is defined as:

> All persons and entities—and their heirs, successors and assignees as defined under "Potential Claimants"—who had an ownership interest in, or had a valid lien on real property that Defendant Washington County obtained through a foreclosure action to satisfy unpaid real estate taxes or other County or local government taxes and associated fees and penalties, as set forth in the Schedule attached as Exhibit 4 to the Settlement Agreement, which real property the County (1) sold for an amount in excess of the unpaid taxes, fees, and other costs associated with that property, and for which the statutory redemption period expired during the Class Period, or (2) donated, transferred, or retained during the Class Period, where 80% of the real market value of the property at the time the deed was transferred to the County exceeded the amount of unpaid taxes, fees, and other costs associated with the property.

*Id.* ¶ 3. Settlement Class Members will have 180 days after preliminary approval of the Settlement to submit a completed Claim Form to the Claims Administrator. *Id.* ¶ 28. The Claim Form will require each claimant to provide sufficient information for the Claims Administrator and the parties to assess whether the claimant is a Settlement Class Member. *Id.* ¶ 27. Further, "[a]s to each Claim asserting an unrecorded interest in an Eligible Property, the person submitting the claim shall be required to submit an affidavit or declaration setting forth all the factual and legal bases for the asserted unrecorded interest." *Id.* ¶ 30. Likewise, "[w]ith regard to claims of an interest in an Eligible Property through adverse possession, the affidavit or declaration shall set forth facts to show all of the elements of adverse possession under Oregon law." *Id.*

After the Claims Administrator receives Claims, it will determine which Claims are Eligible Claims, with assistance from the parties as necessary. *Id.* ¶ 30. Payments will then be made to Eligible Claimants from the Settlement Fund. *Id.* ¶ 15(d). For circumstances in which there are multiple Eligible Claims as to one property that cannot be resolved by the Claimants and/or the Claims Administrator, it is provided that Eligible Claimants can have a Special Master

allocate the proceeds. *Id*. ¶ 31. The costs associated with the Special Master will be paid out of the Settlement Fund. *Id*. ¶ 15(a).

### V. Notice of the Settlement

Under the Settlement, within 45 days of the entry of an Order granting preliminary approval of the Settlement, Class Counsel will, through the Claims Administrator, send to Class Members the proposed Long Form Notice, attached hereto as Exhibit 3, via regular first-class U.S. mail postage pre-paid. Ex. 2 ¶ 23. The Claims Administrator will attempt to locate addresses for potential Class Members, and if a Class Member is determined to be deceased, the Claims Administrator will attempt to locate potential heirs. *Id*. ¶¶ 23–25.

The Claims Administrator will also provide notice by publication of the Summary Notice, in the form attached hereto as Exhibit 4, pursuant to the terms of a publication plan in traditional and social media designed to target potential Class Members in a cost-effective manner. Ex. 2 ¶ 25. A link to the Summary Notice will be published on the Claims Administrator's website. *Id*. The Claims Administrator will also establish a website for the Settlement that will at a minimum contain the Class Notices, Claim Forms, Settlement Agreement, and relevant pleadings and motions filed in the litigation. *Id*. ¶ 26.

## ARGUMENT

### I. The Settlement Merits Preliminary Approval

Under Rule 23(e) of the Federal Rules of Civil Procedure, court approval is required to settle a class action. "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *Nat'l Rural*

*Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). This Motion addresses the first step—preliminary approval.

**a. The standards governing preliminary approval of a class action settlement.**

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quotation marks omitted); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution . . . especially . . . in complex class action litigation."). As the Ninth Circuit has explained, "[t]he purpose of Rule 23(e) is to protect unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008).

Preliminary approval of a class action settlement requires a two-step inquiry. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*., MDL No 2672 CRB (JSC), 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). At the first step, the Court must assess whether a class exists. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The class representatives must (a) "satisfy Rule 23(a)'s four requirements," and (b) "establish that a class action may be maintained under any of Rule 23(b)(1), (2), or (3)." *In re Volkswagen*, 2017 WL 672727, at *12 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); and *Amchem*, 521 U.S. at 613).

"Second, Rule 23(e) requires courts to determine 'whether a proposed settlement is fundamentally fair, adequate, and reasonable.'" *In re Volkswagen*, 2017 WL 672727, at *12 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quotation marks omitted).

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp.*, 2014 WL 3917126, at *1. A court need not conduct a complete analysis of the fairness factors at this time because "some of the 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network*, No. 15-CV-05013-LHK, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). The "decision to approve or reject a settlement is

committed to the sound discretion of the trial judge." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (quotation marks omitted).

When assessing the fairness of the settlement, district courts must also consider the factors set forth in Rule 23(e)(2). *Woody v. Fred Meyer Stores, Inc.*, No. 3:22-cv-01800-HZ, 2024 WL 4528220, at *2 (D. Or. Oct. 17, 2024). Rule 23(e)(2) provides:

> **(2)** ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided for the class is adequate, taking into account:
>
> **(i)** the costs, risks, and delay of trial and appeal;
>
> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>
> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As discussed below, all of the preliminary approval factors are met here.

## II. The Proposed Settlement Is Fundamentally Fair, Adequate, and Reasonable

### a. The Settlement should be presumed fair because it resulted from non-collusive, informed, arm's-length negotiations.

Courts "put a good deal of stock in the product of an arm's length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Medearis v. Or. Teamster Emp'rs. Tr.*, No. CV. 07-723-PK, 2009 WL 1788183, at *3 (D. Or. June 19, 2009) (quoting *Rodriguez*). "Parties represented by competent counsel are better positioned

than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *In re Pac. Enters*). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. Accordingly, as is the case here, where counsel are experienced and support a settlement that was the result of arm's-length negotiations, there is an initial "presumption that the agreement is fair." *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015); *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009).

First, experienced counsel were able to negotiate a substantial recovery for the benefit of the Class before filing a formal complaint against this Defendant. Washington County had already been required to produce third-party discovery in the Consolidated Cases in connection with those plaintiffs' preparation of a motion to certify a Defendant class. Through that discovery, counsel obtained detailed information regarding the subject properties, the amounts of Surplus Proceeds associated with those properties, the costs, fees, and taxes owed, and the valuation of retained properties. Counsel then prepared a complaint, provided it to Washington, and approached the County to negotiate a class-wide resolution before filing suit.

The parties thereafter engaged in informed, arm's-length negotiations between experienced counsel over the course of several months and exchanged multiple proposed settlement drafts. Although there was limited formal litigation between the parties beyond the third-party discovery undertaken, the parties were fully informed by—and benefited from—the legal and factual record developed in the Consolidated Cases since October 2023.

Second, there are no conflicts of interest or collusion between or among the parties. *See Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017). Defendant was represented by the Washington County Attorneys' Office, and Plaintiff was represented by counsel who have been prosecuting the Consolidated Cases for years. The proposed allocation provides that the Class Representative is entitled to the same relief as all other Class Members—that is, the full value of the Surplus Proceeds taken by the County, plus accrued interest. Ex. 2 ¶ 15(d). In addition, any attorneys' fees awarded by this Court will be paid from the Settlement Fund pursuant to a motion to be filed by Class Counsel. No separate fee arrangement was negotiated. *Id.* ¶ 15(c).

Third, Plaintiff and his counsel recommend the Settlement as being fair, reasonable, adequate, and in the best interests of the Class Members. "Great weight" should be accorded to this recommendation of class counsel. *Bell*, 2017 WL 2672073, at *6; *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015). Accordingly, the Court should give an initial "presumption of fairness" to the Settlement. *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015); *see also Walsh v. CorePower Yoga LLC*, No. 16-cv-05610-MEJ, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017).

**b. The Settlement does not suffer from any obvious deficiencies.**

The Settlement is the product of a thorough assessment of the strengths and weaknesses of Plaintiff's case compared to the substantial benefit of securing recovery for the Class without further delay or risk. Although Plaintiff believes he has strong claims under *Tyler*, Washington would contest liability absent the Settlement, creating significant litigation risk. The strength of Plaintiff's claims is reflected in the Settlement's terms, which allow eligible claimants to recover up to 100% of the surplus proceeds and equity taken by the County, plus accrued interest.

To secure a recovery of one hundred cents on the dollar, together with interest calculated from the earliest applicable date for each property (the expiration of the redemption period), Plaintiff agreed to forgo a claim for statutory attorneys' fees as part of the negotiations. Any attorneys' fees will instead be sought through a motion for an award from the common fund, consistent with Ninth Circuit precedent.

As to delay, the case has only recently been filed, and a trial would not occur for several years. Any judgment following trial would likely be subject to an appeal, further extending the timeframe and increasing uncertainty. The Settlement, therefore, reflects Plaintiff's informed assessment of both the general risks inherent in litigation and the specific risks presented here.

Weighing the benefits of the Settlement with the risks that Plaintiff faces in this action, there are no obvious deficiencies in the Settlement. Further, the Settlement contains no obvious defects of the types that courts have found to preclude preliminary approval, such as: unreasonably high attorneys' fees; preferential treatment of the class representative; a deficient notice plan; a burdensome claims procedure; or a plainly unfair allocation scheme or overly broad releases of liability. *See* 4 Newberg on Class Actions § 13:15 (5th ed.) (citing *Pokorny v. Quixtar Inc.*, No. 07–0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011) (fee concerns); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (preferential treatment of class representatives); *Walter v. Hughes Commc'ns, Inc.*, No. 09–2136 SC, 2011 WL 2650711, at *15-16 (N.D. Cal. July 6, 2011) (deficient notice); *Fraser v. ASUS Comput. Int'l*, No. C 12–00652 WHA, 2012 WL 6680142, at *3 (N.D. Cal. Dec. 21, 2012) (overly broad releases). The lack of any obvious deficiencies in the Settlement weighs in favor of preliminary approval.

**c. The Settlement does not improperly grant preferential treatment to the Class Representative or segments of the Class.**

The third factor is whether the Settlement grants preferential treatment to class representatives or segments of the Class. It does not. The method of distribution is designed to compensate all Settlement Class Members based on the surplus proceeds or equity generated by the sale or retention of the Eligible Property for which they submit a valid claim. The Class Representative will not be favored or treated differently under that plan. *See* Ex. 2 ¶ 15. Further, this distribution plan has a reasonable and rational basis and weighs in favor of approval.[1] *See In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015).

**d. The Settlement falls within the range of possible approval.**

To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement." *In re Tableware*, 484 F. Supp. 2d at 1079–80. Even when the settlement amount is small in relation to a possible future recovery, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting

---

[1] Plaintiff may move for a reasonable award to be paid to the Settlement Class Representative for his service to the Class. Any such award sought by Plaintiff will be reasonable in relation to the average Class Member's recovery and will not be conditioned on the Settlement Class Representative's support for the Settlement. Service awards of this nature are routinely approved. *See e.g., Granados v. Onpoint Comm. Credit Union*, No. 3:21-cv-847-SI, 2025 WL 1640204, at *9 (D. Or. June 10, 2025) (noting that while the adequacy of class representatives may be undermined by "incentive awards that are contingent on the named representatives approving class settlement or by disproportionately large incentive awards" the court approved an incentive award of $10,000) (citations omitted); *Chehalem Physical Therapy v. Coventry Health Care, Inc.*, No. 3:09-CV-00320-HU, 2014 WL 4373150, at *10 (D. Or. Sept. 3, 2014) (granting final approval to class action settlement and finding $10,000 incentive payments for class representative reasonable).

*Officers for Justice*, 688 F.2d at 628). The adequacy of the amount offered in settlement "cannot be assessed in a vacuum. Rather, it must be considered in light of 'the strength of the plaintiff's case' and the risks in pursuing further litigation." *Viceral v. Mistras Grp., Inc.*, No. 15-CV02198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016); *see also Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *In re Mego Fin. Corp*., 213 F.3d at 459 ("[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.").

Here, the Settlement provides the benefit of $1,500,000.00, representing 100% of the Surplus Proceeds currently held by Washington, plus interest, without further risk to the Class, including risks presented by additional developments that could impact the claims, trial, and appeal. The Settlement Class Members are likely to obtain the full amount of Surplus Proceeds to which they would be entitled if they prevailed after a trial. The Settlement provides significant relief to the Class now, without further delay and expense. For these reasons, the amount of the Settlement is very much within the "range of possible approval."

## III. The Proposed Settlement Class Satisfies the Standard for Certification Under Rule 23

To certify the proposed Settlement Class, the Settlement Class must satisfy all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b). *In re Hyundai and Kia Fuel Econ. Litig*., 926 F.3d 539, 556 (9th Cir. 2019).

### a. The Rule 23(a) requirements are satisfied.

#### i. The Settlement Class is so numerous that joinder is impractical.

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). This District follows the rule of thumb that "approximately forty members is sufficient to satisfy the numerosity requirement."

*Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017). There is no hard and fast number, however, and "Plaintiffs need not provide an exact number of class members, 'so long as there are enough to make joinder impracticable.'" *Moss v. U.S. Secret Serv.*, No. 1:06–cv–3045–CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015).

As demonstrated on the list attached as Exhibit 5, this Settlement involves 46 Eligible Properties. Many of the properties have more than one interest holder and therefore more than one associated Class Member. The number of Class Members thus is all but certain to exceed 40 persons.

**ii. The Commonality requirement is satisfied.**

Under Rule 23(a)(2), a plaintiff must establish that there are "questions of law or fact common to the class." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. at 315. The requirements of Rule 23(a)(2) have "been construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Moss*, 2015 WL 5705126, at *3. Accordingly, commonality is "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010). "All questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (quotation marks omitted). Rather, commonality requires the existence of even a single common contention that is capable of class-wide resolution. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 359). The common contention or contentions necessary to establish commonality must be "apt to drive the resolution of the litigation." *Id*.

Here, Plaintiff has identified numerous common issues, the most significant of which are:

- Whether the County has or had a policy of seizing properties to satisfy unpaid property tax debts and keeping the surplus market value of the properties or the surplus proceeds from sales of the properties.

- Whether such a policy violates the United States Constitution's prohibition on the government's taking of property without paying just compensation.
- Whether such a policy violates the United States Constitution's prohibition on excessive fines.
- Whether such a policy violates the Oregon Constitution.

(ECF 1 ¶ 33.) Resolution of these common issues would determine the allegations for the entire Class "in one stroke." *Hurst v. First Student, Inc.*, No 3:15-cv-00021-HZ, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015) (quoting *Jimenez*, 765 F.3d at 1165). The commonality requirement is therefore satisfied.

**iii. The Settlement Class Representative's claims are typical of those of the Settlement Class.**

The third requirement is that the "claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *Hurst*, 2015 WL 6437196, at *3; *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 399 (D. Or. 1996). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d at 984 (quotation marks omitted).

Like commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also, Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 363 (N.D. Cal. 2010). The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."

*Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co*., 231 F.R.D. 391, 396 (N.D. Cal. 2005)). This requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

The claims asserted by the Settlement Class Representative are typical of those of the Settlement Class. Plaintiff alleges that Washington County foreclosed on the Brackett Properties for nonpayment of property taxes and retained the surplus equity in those properties without providing Plaintiff any procedure for recovering the surplus equity. (ECF 1 ¶¶ 11–22.) Plaintiff further alleges that Washington County acted in the same manner with respect to other members of the Settlement Class. (*Id.* ¶¶ 23–24.) His claims are therefore typical of the claims of the Settlement Class.

**iv. The Settlement Class Representative and Class Counsel will adequately represent the Class.**

The final requirement of Rule 23(a) is that the representative plaintiff will fairly and adequately represent the interests of the Class. The relevant inquiries are "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). There are no conflicts between the Class Representative or Class Counsel, on the one hand, and the Settlement Class, on the other. The interests of all Class Members are aligned in obtaining the greatest possible recovery against Washington. As set forth above, Class Counsel are experienced class action litigators and have capably represented the Class. Therefore, the Settlement Class Representative and Class Counsel will adequately represent the interests of the Settlement Class.

**b. The Rule 23(b)(3) requirements are satisfied.**

A class may be certified under Rule 23(b)(3) when: (a) "questions of law or fact common to the class members predominate over any questions affecting only individual members"; and (b) the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

**i. Common questions predominate.**

"The predominance inquiry . . . asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1019 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). "The focus is on the relationship between the common and individual issues." *Id*. (quotation marks omitted). To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members. "Predominance exists 'when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Moss*, 2015 WL 5705126, at *4 (quoting *Hanlon*, 150 F.3d at 1022).

Rule 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions will favor the class. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor."). Predominance does not require a plaintiff to show a complete absence of individual issues. Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)

(quotation marks omitted). Predominance is not a matter of "nose-counting, and "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016).

Here, common questions of fact and law affecting the Settlement Class predominate over any individualized issues. The primary common legal question is whether Washington County violated the law by taking the surplus proceeds and surplus equity associated with Settlement Class Members' properties without providing any mechanism for just compensation. Resolving that issue for the Settlement Class Representative will resolve it for all Class Members. The only individualized issue likely to arise concerns the calculation of the surplus associated with each Eligible Property. That determination, however, is straightforward and can be made using publicly available information regarding property taxes owed, the proceeds of any County sale, and the property's assessed taxable value. In fact, Washington has already performed this mechanical calculation.

**ii. The class action mechanism is superior to other methods of adjudication.**

Rule 23(b)(3) also requires the Court to determine whether a class action is superior to other methods of adjudication. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *see also Fosbre v. Las Vegas Sands Corp*., No. 2:10-CV-00765-APG-GWF, 2015 WL 3722496, at *5 (D. Nev. June 15, 2015) ("It is preferable to determine these common questions once, rather than a multitude of times or not at all if the small value of individual recoveries would deter any single plaintiff from bringing suit."). Additionally, "[a]

class action is generally superior if it will greatly reduce litigation costs." *O'Shea v. Am. Solar Solution, Inc.*, 318 F.R.D. 633, 639 (S.D. Cal. 2017).

The superiority requirement is satisfied here because there are significant common issues, as discussed above, that can be most efficiently resolved on a class-wide basis, thereby greatly reducing litigation costs.

## IV. The Form and Method of Notice Should Be Approved

Plaintiffs also respectfully request that the Court approve the form and content of the proposed Notice to the Settlement Class, which is attached as Exhibit 3. Where—as here—the Court will likely be able to approve the proposed settlement and certify the class, the Court "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1)(B); *see also* Fed. R. Civ. P. 23(c)(2)(B).

Rule 23(c)(2)(B) provides various requirements for the method and content of the notice. Regarding the method, it provides that the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It further states that "notice may be by one or more of the following: United States mail, electronic mail, or other appropriate means." *Id.* As to contents, Rule 23(c)(2)(B) provides that the notice must state in plain, easily understood language, the following:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

"Although that notice must be 'reasonably certain to inform the absent members of the plaintiff class,' actual notice is not required." *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). A notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed Notice satisfies all of these requirements. As to content, it informs Class Members of the nature of the case, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released. Ex. 3 at 1, 4–8. It describes the Settlement and the potential recovery for each claim made, explains that the parties disagreed as to whether any damages would be recoverable if the claims proceeded to trial, and sets forth the purpose of the Settlement. *Id.* at 4–7.

The Notice also identifies the attorneys' fees provision, outlines the claims process, and advises Class Members of the binding effect of a judgment. *Id.* at 6–9. It explains that Class Members may enter an appearance through counsel, and it details how to opt out, object to the Settlement, or submit a claim. *Id.* at 6–8. The Notice provides the names, addresses, telephone numbers, and website of the Claims Administrator, as well as contact information for Lead Counsel. *Id.* at 8, 10. It further identifies the date, time, and location of the Final Approval Hearing and explains how to check for any updates or changes. *Id.* at 2, 9–10. Finally, it includes the deadlines for submitting a Claim Form and for objecting to the Settlement, the Plan of

Allocation, or the requested attorneys' fees and expenses. *Id.* at 2. In short, the Notice's disclosures are comprehensive and satisfy the content requirements of Rule 23 and due process.

As to the method of notice, the Claims Administrator will mail the Notice to all Class Members at their last known addresses, using public records and information provided by the County, and will make reasonable efforts to locate any Class Members whose addresses are outdated. Ex. 1 ¶ 24. In addition, the Claims Administrator will publish the Summary Notice through print and online media. *Id.* ¶ 26. Washington County will publish the Summary Notice in its regular publications, newsletters, and on its website. *Id.* The Claims Administrator will also create a dedicated Settlement website. *Id.* ¶ 27. The website will include the Class Notices, Claim Forms, the Settlement Agreement, and relevant pleadings and motions filed in the litigation. Defendant and Plaintiff's Counsel will provide links on their respective websites directing users to the Settlement website. *Id.*

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks the Court to enter an Order in the form submitted herewith and agreed to by the settling parties granting preliminary approval to the Settlement so that notice of the terms of the Settlement may be given to Settlement Class Members. Plaintiff also asks the Court to schedule a hearing to consider: (1) final approval of the Settlement; (2) certification of the Settlement Class; (3) Class Counsel's request for fees, costs, and expenses, and a proposed service award to the Class representative; (4) entry of final judgment; and (5) any other matters the Court may deem appropriate.

DATED this 21st day of April, 2026.

*/s/ David F. Sugerman*

**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Proposed Liaison and Class Counsel for Plaintiffs*

**Joseph C. Kohn**
**William Hoese**
**Zahra R. Dean**
KOHN SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
jkohn@kohnswift.com
zdean@kohnswift.com
whoese@kohnswift.com
ekohn@kohnswift.com

*Proposed Lead and Class Counsel for Plaintiffs*

**Akeeb Dami Animashaun**
355 S. Grand Ave, Suite 2450
Los Angeles, CA 90071
Tel: (929) 266-3971
dami@animashaun.me

*Proposed Lead and Class Counsel for Plaintiffs*

**David H. Fink**
**Nathan J. Fink**
**David A. Bergh**
FINK BRESSACK
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com

*Proposed Lead and Class Counsel for Plaintiffs*

**Gregory P. Hansel**
**Shana M. Solomon**
**Elizabeth F. Quinby**
**Michael D. Hanify**
**Kat Mail**
PRETI FLAHERTY BELIVEAU
& PACHIOS, CHARTERED, LLP
One City Center, P.O. Box 9546
Portland, ME 04112
Tel: (207) 791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com
mhanify@preti.com
kmail@preti.com

*Proposed Lead and Class Counsel for Plaintiffs*

**Jacob Loup**
LAW OFFICE OF JACOB LOUP
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Tel: (347) 391-5009
jl@louplaw.com

*Proposed Lead and Class Counsel for Plaintiffs*